**NOT FOR PUBLICATION**  **CLOSED**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JOHN MATTEI, | : |
| Plaintiff, | : Civil Action No. 03-5472 (JAP) |
| v. | : |
|  | : **OPINION** |
| TURNER CONSTRUCTION CO., | : |
| Defendant. | : |

APPEARANCES

KLAUSNER & HUNTER
Stephen E. Klausner
63 East High Street
P.O. Box 1012
Somerville, NJ 08876-1012
    Attorneys for Plaintiff

PECKAR & ABRAMSON, P.C.
Gregory R. Begg
70 Grand Avenue
River Edge, NJ 07661
    Attorneys for Defendant

PISANO, District Judge.

John Mattei ("Plaintiff") filed a Complaint with this Court on November 17, 2003, alleging that Turner Construction Company ("Defendant") wrongfully terminated his employment by discriminating against him because of his gender and retaliating against him contrary to Federal and New Jersey law.  Defendant now moves for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure ("FRCP").  This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1367.  For the reasons expressed below, the Court grants Defendant's motion for summary judgment.

## I. Factual History

Defendant provides General Contracting and Construction Management services on construction projects throughout the United States.  (Defendant's Rule 56.1 Statement of Uncontroverted Material Facts, referred to herein as "Defs. 56.1 Stmt." at ¶ 1).  Defendant employed Plaintiff as a Cost Engineer at its Monroe Township Regional office from August 30, 1999 until he was terminated on October 22, 2001.  (*Id*. at ¶ 2).  Plaintiff's direct supervisor was Senior Cost Engineer Kathy Regan ("Regan").  (*Id*. at ¶ 13).  Regan reported to the Financial Manager of the Philadelphia Business Unit, Jim Ruane who in turn reported to the Vice President and Regional Controller for Defendant's Eastern Region Financial Center, Joseph Grande ("Grande").  (*Id*. at ¶¶ 11, 13).

Throughout Plaintiff's tenure, Grande personally reviewed Plaintiff's work product as he did for all Cost Engineers in the region.  (*Id*. at ¶ 30).  Beginning in Spring 2001 and through the time of Plaintiff's termination, Grande received complaints about Plaintiff's performance from

Project Engineer Brian Weisser, Project Executive Jeff Klinger, Operations Manager Rick Stoudt, Financial Manager Jim Ruane, as well as Regan. (*Id*. at ¶¶ 29, 31). The complaints concerned Plaintiff's lateness for appointments, lack of preparation for meetings, and incomplete or inaccurate work product. (*Id*. at ¶ 31). Plaintiff's performance deteriorated to the extent that Grande and others began discussing the likelihood of his termination. (*Id*. at ¶¶ 6, 29-30, 32). During the period of May through September, Grande developed the opinion that Plaintiff's performance necessitated his discharge and he discussed that possibility with Ruane who agreed that termination might be necessary. (*Id*. at ¶ 53).

Plaintiff also engaged in inappropriate behavior on two occasions, the last of which precipitated his termination. (*Id*. at ¶ 6). In May 2000, Plaintiff wrongfully obtained an e-mail correspondence from a male co-worker's e-mail file prompting Plaintiff to question co-worker Nancy Cicero about the male co-worker's sexual preference. (*Id*. at ¶¶ 59-63). Cicero informed the male co-worker of what occurred. (*Id*.). The male co-worker complained to Grande, who after investigating, reprimanded Plaintiff for his conduct. (*Id*.). The second incident occurred after Grande circulated an e-mail to all employees under his reporting line reminding them of Defendant's policy regarding the use of the company e-mail system to communicate harassing, pornographic or offensive information. (*Id*. at ¶¶ 54, 64-65). On October 22, 2001, approximately one month after the terrorist attacks of September 11, 2001, Plaintiff created and sent an e-mail to numerous Defendant employees with an attachment consisting of photographic images of Nancy Cicero and a former employee, both of Asian decent, that were modified to depict them as terrorist Osama Bin Laden. (*Id*. at ¶¶ 54-56). Grande received a copy of the e-mail and discussed the situation with Jim Ruane who concurred that, in light of Plaintiff's poor

3

performance, his prior conduct regarding a co-worker's sexual preference, his prior warning regarding improper usage of the e-mail system and this most recent e-mail incident, Plaintiff should be fired. (*Id.* at ¶ 56). Consequently, Grande invited Plaintiff to a meeting with him and Ruane on October 22, 2001, at which Plaintiff admits he was terminated by Grande for poor performance and several instances of inappropriate conduct. (*Id.* at ¶¶ 4, 5; Plaintiff's Rule 56.1 Statement of Uncontroverted Material Facts, referred to herein as "Plfs. 56.1 Stmt." at ¶ 5).

Nonetheless, Plaintiff claims that Defendant terminated his employment because of his gender and in retaliation for complaining of discriminatory treatment. (See generally Complaint). Plaintiff alleges that on two occasions Grande warned Plaintiff to be wary of Regan because she was anti-male. On the first occasion, Grande told Plaintiff that he had two strikes against him because he was single and male. (Plfs. 56.1 Stmt. at ¶ 30). On another occasion, Grande told Plaintiff that because Plaintiff was single and male, Plaintiff was not going to go anywhere, even though Regan did not complain about his work. (*Id*. at ¶ 31). Grande denies making these statements. (Defs. 56.1 Stmt. at ¶ 67).

Plaintiff observed that Regan maintained some anti-male, pro-feminist pictures and paraphernalia on her desk, walls and the file cabinet behind her desk, specifically a mug with an anti-male slogan and a cartoon depicting males in a negative light. (Plfs. 56.1 Stmt. at ¶ 2). Plaintiff alleges that during the course of his employment, Regan exhibited discriminatory treatment towards him because of his gender. Plaintiff alleges that Regan was very condescending towards him and co-workers often witnessed that the tone and words she used with him were always sarcastic, abusive and demeaning. (*Id*. at ¶¶ 13-14, 33). On or about July 2, 2001, Plaintiff sent a memo to Grande complaining of hostile abuse and treatment by Regan.

4

(Defs. 56.1 Stmt. at ¶¶ 41-42). Plaintiff's memo did not include complaints of gender discrimination. (*Id.* at ¶¶ 43-45). Nor did Plaintiff ever complain of discriminatory treatment to Grande or anyone else. (*Id.* at ¶ 46).

Lastly, Plaintiff alleges that a female co-worker from a different department sent at least two offensive e-mails and she went unpunished. (Plfs. 56.1 Stmt. at ¶¶ 22, 36). The female employee did not work under Grande's reporting line and Grande had no supervisory authority over her. Neither Plaintiff nor any other employee reported the e-mails to any Turner executive or decision-maker with authority over the female employee. As a result, no disciplinary action was taken against the female co-worker.

## II. Summary Judgment Standard

A court shall grant summary judgment under FRCP 56(c) "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The substantive law identifies which facts are critical or "material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact raises a "genuine" issue "if the evidence is such that a reasonable jury could return a verdict" for the non-moving party. *Healy v. N.Y. Life Ins. Co.*, 860 F.2d 1209, 1219 n.3 (3d Cir. 1988).

On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party makes this showing, the burden shifts to the non-moving party to present evidence that a genuine fact issue compels a trial. *Id.* at 324. In so presenting, the non-moving party may not simply rest

on its pleadings, but must offer admissible evidence that establishes a genuine issue of material fact, *id.*, not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In other words, a genuine issue for trial does not exist unless the non-moving party proffers evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249.

The Court must consider all facts and their logical inferences in the light most favorable to the non-moving party. *Pollock v. American Tel. & Tel Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). The Court shall not "weigh the evidence and determine the truth of the matter," but need determine only whether a genuine issue necessitates a trial. *Anderson*, 477 U.S. at 249. If the non-moving party fails to demonstrate proof beyond a "mere scintilla" of evidence that a genuine issue of material fact exists, then the Court must grant summary judgment. *Big Apple BMW v. BMW of N. Am.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

**III. Discussion**

    **A. Reverse Discrimination**

Reverse discrimination cases in this Circuit are governed by *Iadimarco v. Runyon*, 190 F.3d 151 (3d Cir. 1999). *See Corbett v. Sealy, Inc.*, No. 03-4190, 2005 WL 612922 (3d Cir. 2005); *Medcalf v. Trustees of Univ. of Pennsylvania*, 71 Fed. Appx. 924 (3d Cir. 2003). To defeat summary judgment under *Iadimarco*, a plaintiff first must establish a *prima facie* case of reverse discrimination. If successful, the defendant then has the burden of providing a legitimate, nondiscriminatory reason for the employment action. The burden then returns to the plaintiff to prove by a preponderance of the evidence that defendant's articulated reason is a pretext for the

true discriminatory reason.  190 F.3d at 161.[1]

Establishment of a *prima facie* case requires the plaintiff "to present sufficient evidence to allow a fact finder to conclude that the employer is treating some people less favorably than others based upon a trait that is protected under Title VII."  *Id.*  Because Plaintiff makes a claim of gender discrimination based on a theory of disparate impact he must show that similarly situated female employees "have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it."  *Bullock v. Children's Hosp. of Philadelphia*, 71 F. Supp. 2d 482, 489 (E.D. Pa.1999) (citation and internal quotations omitted).  The defendant's burden to articulate some legitimate, nondiscriminatory reason for the employment action "'is one of production, not persuasion; it can involve no credibility assessment.'"  *Medcalf*, 71 Fed. Appx. at 927 (quoting *Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 142 (2000)).  To defeat summary judgment the plaintiff must then overcome the burden of proving pretext by "'point[ing] to *some evidence*, direct or circumstantial, from which a fact finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'"  *Iadimarco*, 190 F.3d at 166 (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)) (emphasis in *Iadimarco*).

---

[1]The standard is the same under the New Jersey Law Against Discrimination ("NJLAD"). *See Zive v. Stanley Roberts, Inc.*, 867 A.2d 1133 (N.J. 2005); *Murphy v. Hous. Auth. & Urban Redev. Agency of Atlantic City*, 32 F. Supp. 2d 753, 763 (D.N.J. 1999) ("The *prima facie* elements of employment discrimination are the same for claims under Title VII and the NJLAD").

In the case at hand, Plaintiff attempts to establish a *prima facie* case of reverse discrimination by suggesting that a female employee also sent offensive e-mails but was not terminated. The facts, however, do not support Plaintiff's disparate impact claim that Defendant treats male employees less favorably than female employees. Although there is no evidence that the female employee sent the e-mails, for purposes of this motion the Court assumes that such e-mails were sent. First, the female employee worked in a different department under different supervisors who were never informed of the allegedly offensive e-mails. Second, there is no evidence that the female employee received any complaints about her work performance in her seven years while employed by Defendant. Third, Plaintiff's supervisor, Grande, knew of Plaintiff's e-mails and received complaints about the e-mails. Fourth, Grande also received numerous complaints about Plaintiff's work performance from various managers and supervisors during the twenty-six months of his employment. These facts indicate that the female employee was not similarly situated to Plaintiff. Grande knew Plaintiff had sent inappropriate e-mails because he had received complaints about them, whereas the female employee's supervisors knew nothing about the e-mails she allegedly sent. Also, Grande had received numerous complaints from various supervisors regarding Plaintiff's work performance, whereas the female employee had an unblemished work record. Even if the Court ignored the work record comparisons, the facts do not establish that the female employee was similarly situated with Plaintiff. Plaintiff has not pointed to sufficient evidence that Defendant treated Plaintiff less favorably than female employees; thus, he has failed to establish a *prima facie* case of discrimination.

Assuming that Plaintiff did establish a *prima facie* case, he fails to demonstrate that

Defendant's articulated legitimate reason for termination is a pretext for an underlying discriminatory reason. Defendant claims that Plaintiff was fired for regularly poor work performance and violating the company e-mail policy. Plaintiff offers no evidence that would lead a fact finder to either disbelieve Defendant's stated reasons for termination or believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the termination. Even assuming that Regan, Plaintiff's direct supervisor, exhibited an animosity towards Plaintiff because of his gender, which is the only possible evidence of discrimination, she played no role in the decision-making process. The evidence demonstrates that Plaintiff had a poor work record and violated the company e-mail policy. The Court points this out not as a determination of the truth of the matter but to demonstrate that Plaintiff has come forth with no countervailing evidence that would indicate discriminatory motivation by Defendant. Defendant has established that there is no genuine issue of material fact and Plaintiff has failed to establish either a *prima facie* case of discrimination or, assuming he had, that Defendant's articulated legitimate reason was a pretext. Therefore, the Court grants summary judgment to Defendant.

### B.  Retaliation

"A plaintiff alleging that an unfavorable job action is based upon an illegal retaliatory motive in violation of Title VII must first establish that (1) he was engaged in protected activity; (2) he was subject to an adverse job action subsequent to or contemporaneously with such activity; and (3) there is a causal link between the protected activity and the subsequent adverse job action." *Sarullo v. U.S. Postal Service*, 352 F.3d 789, 800 (3d Cir. 2003) (citation and

internal quotations omitted).[2] In support of his retaliation claim, Plaintiff points to a memo he sent to Grande on July 2, 2001, complaining of hostile abuse and treatment by Regan. In the memo Plaintiff complained that Regan acted abruptly towards him and that he was upset that Regan requested a doctor's note for an extended absence. However, Plaintiff's memo did not include complaints of gender discrimination and Plaintiff never verbally complained of discriminatory treatment to Grande or anyone else. Plaintiff cannot establish that he was engaged in a protected activity. *Compare Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1085 (3d Cir. 1996) ("protesting what an employee believes in good faith to be a discriminatory practice is clearly protected conduct") (citations omitted). Additionally, Plaintiff does not point to any evidence that his termination was contemporaneous to his complaint or that there is a causal link between the two. Therefore, Plaintiff fails to make out a *prima facie* case of retaliation and the Court grants summary judgment to Defendant.

### IV. Conclusion

For the reasons expressed above, Defendant's motion for summary judgment is granted.

s/ Joel A. Pisano
JOEL A. PISANO, U.S.D.J.

Dated: July 19, 2005

---

[2]The standard is the same under the NJLAD. *See Velantzas v. Colgate-Palmolive Co., Inc.*, 536 A.2d 237, 238 (N.J. 1988); *Pilkington v. Bally's Park Place, Inc.*, 851 A.2d 1, 7 (N.J. Super. Court. App. Div. 2003) *rev'd on other grounds*, 850 A.2d 1225 (N.J. 2004).